# Exhibit A



| | |
|---|---|
| **POLICY STATEMENT** | |
| Commonwealth of Pennsylvania • Department of Corrections | |

| Policy Subject: | Policy Number: |
|---|---|
| **Inmate Mail and Incoming Publications** | **DC-ADM 803** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **October 3, 2018** | **Signature on File** | **October 3, 2018** |
| | **John E. Wetzel** | |

## I. AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. APPLICABILITY

This policy is applicable to all facilities operated under the jurisdiction of, or conducting business with the Department of Corrections.

## III. POLICY

It is the policy of the Department to allow an inmate access to communicate with members of society through the mail system[1] as set forth in this policy and procedures manual, to inspect mail, determine the types of publications allowed, and to review publications intended for inmates. Restrictions shall be related directly to facility order and security, public safety, and obscenity laws and statutes.[2]

## IV. PROCEDURES

All applicable procedures are contained in the procedures manual that accompanies this policy document.

---

[1] 5-7D-4492
[2] 5-7D-4487, 5-7D-4488, 5-7D-4490

## V. SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary/designee may suspend any provision or section of this policy for a specific period.

## VI. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## VII. RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

1. Policy

   This policy document is public information and may be released upon request.

2. Confidential Procedures (if applicable)

   Confidential procedures for this document, if any, are <u>not public information</u> and may not be released in its entirety or in part, without the approval of the Secretary of Corrections/designee. Confidential procedures may be released to any Department of Corrections employee on an as needed basis.

### B. Distribution of Policy

1. General Distribution

   The Department of Corrections policy and procedures shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution of confidential procedures to other individuals and/or agencies is subject to the approval of the Secretary of Corrections/designee.

2. Distribution to Staff

   It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures either in hard copy or via email, whichever is most appropriate.

## VIII.  SUPERSEDED POLICY AND CROSS REFERENCE

### A.  Superseded Policy

1.  Department Policy

    DC-ADM 803, Inmate Mail and Incoming Publications, issued September 16, 2015, by Secretary John E. Wetzel.

2.  Facility Policy and Procedures

    This document supersedes all facility policy and procedures on this subject.

### B.  Cross Reference(s)

1.  Administrative Manuals

    a.  DC-ADM 005, Collection of Inmate Debts

    b.  DC-ADM 801, Inmate Discipline

    c.  DC-ADM 802, Administrative Custody Procedures

    d.  DC-ADM 804, Inmate Grievance System

    e.  6.3.1, Facility Security

    f.  7.3.1, Reentry and Transition

    g.  7.8.1, Inmate Recreational and Therapeutic Activities

2.  ACA Standards

    a.  Administration of Correctional Agencies: 2-CO-5D-01

    b.  Adult Correctional Institutions: 5-3D-4274, 5-3D-4275, 5-3D-4276, 5-4A-4266, 5-7D-4487, 5-7D-4488,5-7D-4489, 5-7D-4490, 5-7D-4491, 5-7D-4492, 5-7D-4493, 5-7D-4494, 5-7D-4496

    c.  Adult Community Residential Services: 4-ACRS-6A-06, 4-ACRS-6A-08, 4-ACRS-6A-09

    d.  Correctional Training Academies: None

3.  PREA Standards (28 C.F.R.)

    115.51



| | |
|---|---|
| PROCEDURES MANUAL | |
| Commonwealth of Pennsylvania • Department of Corrections | |

| **Policy Subject:** | **Policy Number:** |
|---|---|
| **Inmate Mail and Incoming Publications** | **DC-ADM 803** |

| **Date of Issue:** | **Authority:** | **Effective Date:** |
|---|---|---|
| **October 3, 2018** | **Signature on File** <br> **John E. Wetzel** | **October 3, 2018** |

Release of Information:

**Policy Document:** This policy document is public information and may be released upon request.

**Procedures Manual:** The procedures manual for this policy may be released in its entirety or in part, with the prior approval of the Secretary/designee. Unless prior approval of the Secretary/designee has been obtained, this manual or parts thereof may be released to any Department employee on an as needed basis only.

**DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual**
**Table of Contents**

## Section 1 – Mail Processing Procedures

A. Mail Privileges ........................................................................................................ 1-1
B. General Incoming Inmate Mail Procedures ....................................................... 1-6
C. Incoming Inmate Mail Procedures – Non-Privileged Mail................................ 1-8
D. Incoming Inmate Mail Procedures – Privileged Mail...................................... 1-12
E. General Outgoing Inmate Mail Procedures ..................................................... 1-13
F. Outgoing Inmate Correspondence Procedures – Non-Privileged Mail Correspondence.. 1-13
G. Outgoing Privileged Correspondence .............................................................. 1-14
H. Electronic Mail (Email) ..................................................................................... 1-15
I. Presorted Standard Mail ................................................................................... 1-15
J. Certified or Registered Mail ............................................................................. 1-15
K. Stationery, Pen, and Postage for Indigent Inmates ....................................... 1-16
L. Inmates Who Regularly Use Names Different from the Name on the Commitment Form  1-17
M. Inmate Organization Correspondence ............................................................ 1-19

Correspondence Between Inmates Form ............................................... Attachment 1-A
Notice of Unacceptable Correspondence Form .................................... Attachment 1-B
Notice of Photo Denial Form................................................................... Attachment 1-C
Inmate Correspondence Tracking Form ................................................ Attachment 1-D
Legal Mail Log .......................................................................................... Attachment 1-E

## Section 2 – Publications

A. Incoming Publications ........................................................................................ 2-1

Notice of Incoming Publication Denial Form ........................................ Attachment 2-A

## Section 1 – Mail Processing Procedures

### A. Mail Privileges

1. An inmate is permitted to correspond with the public, his/her attorney(s), and public officials.[1]

2. There is no limit to the number of correspondents to whom an inmate may send or from whom an inmate may receive mail.[2]

3. All incoming, non-privileged inmate correspondence must be addressed and sent to the Department's contracted central incoming inmate mail processing center. Mail must be addressed as follows:

    Smart Communications/PA DOC
    Inmate Name/Inmate Number
    Institution Name
    P.O. Box 33028
    St. Petersburg, FL 33733

    Example:

    Smart Communications/PA DOC
    Joe Jones/AB 1234
    SCI Camp Hill
    P.O. Box 33028
    St. Petersburg, FL 33733

4. All incoming, privileged inmate correspondence must be addressed and sent to the inmate at the address of the institution where he or she is housed.

5. An inmate may not:

    a. correspond with a current or former inmate, parolee, probationer or co-defendant unless approval is given pursuant to this policy;

    b. transfer or receive through any means whatsoever, negotiable instruments, money, or items of monetary value to or from any other inmate, former inmate, parolee, probationer, co-defendant, the individual family members of any of the preceding individuals, or victim(s) of the inmate's criminal acts or their immediate family members without the prior written approval of the Facility Manager/designee. Approval granted at one facility shall transfer with the recipient inmate to any other Department facility; however, any approval granted or transferred may be revoked for changed circumstances;

---

[1] 5-4A-4266, 5-3D-4275, 5-7D-4487, 5-7D-4492
[2] 5-4A-4266, 5-7D-4487, 5-7D-4488

**NOTE**: An inmate shall be permitted to receive cancelled checks, but shall NOT be permitted to receive blank checks, cash advances, vouchers, and/or credit/debit/charge cards from any source.

c. receive personal checks, cash, or money orders sent through the mail. A personal check, cash, or money order discovered during an inspection shall be treated as contraband and held pending any grievance or appeal concerning it. The permitted contents of the mail shall be scanned and delivered to the inmate in accordance with this policy.

Money orders will only be accepted through the third-party vendor contracted by the Department for this purpose. This service allows funds to be posted to inmate accounts electronically. The sender must follow the vendor's procedures to use the service. Additional information concerning the vendor is available through the Department's website, www.cor.pa.gov. If a family member or friend sends, or has any business, financial entity, or other entity send a financial instrument in an attempt to circumvent the requirement to use the contracted third-party vendor, the financial instrument shall be deemed contraband;

d. receive any financial instrument including cashier's checks except as part of a legitimate business transaction. If incoming mail contains a permitted cashier's check, the check shall be recorded, indicating the nature of the receipt, the sender, the amount received, and the date.[3] A **DC-130B, Cash Transaction Receipt** shall be issued to the inmate for all amounts received. The cashier's check shall be forwarded to the facility Business Manager who shall deposit the money into the inmate's account;

e. receive official documents such as a driver's license, birth certificate, social security card, welfare card, medical card, etc. Such documents contained in incoming mail shall not be delivered to the inmate, but shall be transferred to a designated safe area or file and maintained by the Department. Department staff shall notify the inmate and his/her counselor of the document being held and forward only the scanned correspondence to the inmate;

f. correspond with any of the following individuals unless prior written approval was provided by the Facility Manager/designee. Approval granted at one facility shall transfer with the recipient inmate to any other Department facility; however, any approval granted or transferred may be revoked for changed circumstances;

   (1) a current or former employee;

   (2) a current or former volunteer;

   (3) a current or former contract employee;

---

[3] 5-7D-4494

(4) a victim(s) of the inmate's criminal acts (the Office of the Victim Advocate [OVA] will provide verification that an individual is a victim of the inmate's criminal acts, at the request of the Facility Manager/designee); or

(5) the immediate family members of any of the preceding individuals.

g. send or receive correspondence containing threatening or obscene materials or correspondence containing criminal solicitations or furthering a criminal plan or misconduct offense;

h. use the facility address to fraudulently identify himself/herself as an employee, agent, or representative of the facility; for example:

> Theodore Smith, Paralegal
> SCI Mahanoy
> 301 Morea Road
> Frackville, PA 17932

i. write to an individual who has informed the Department, in writing, that he/she does not wish to receive correspondence from the inmate or anyone who has an active Protection from Abuse Order (PFA) against the inmate that prohibits such contact. This restriction is not to be interpreted to infringe on the right of an inmate to correspond with a public official with regard to the performance of his/her official duty or to file pleadings in a court. When the inmate is given a "no contact" restriction, the name of the individual who requested the restriction and the date the restriction was issued to the inmate shall be entered by the Unit Manager/designee into the Unit Management System under the "Security Concerns" tab;

j. correspond with any prohibited party directed through a third party;

k. correspond with a public official using an address different than the official's business address;

l. send battery-operated greeting cards;

m. send or receive "bill-me-later" or free gift transactions;

n. receive correspondence or homemade artwork that has any item affixed to it (excluding a mailing label that is affixed to the envelope) with glue or other types of adhesives, including tape;

o. receive correspondence that exceeds the following size specifications: 12.5 inches wide or 25.5 inches long; and

p. receive more than 25 photographs per individual item of correspondence.

Issued: 10/3/2018
Effective: 10/3/2018

**DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual**
**Section 1 – Mail Processing Procedures**

6. When an inmate wishes to correspond with an inmate at another facility (whether under the Department's jurisdiction or the jurisdiction of any other state, county, or federal agency or contractor) or a juvenile in a detention center:

   a. neither inmate can be in disciplinary custody status;

   b. each inmate must submit a request to the counselor at his/her current facility; the request must include the name and number of the other inmate, the relationship between them, the reason for the correspondence, and the name of the facility where the other inmate is located;

   c. the counselor will verify the relationship between the inmates, and prepare and circulate a **DC-46, Vote Sheet**;

   d. if approved, the counselor will prepare a **Correspondence Between Inmates Form (Attachment 1-A)**, obtain the Facility Manager/designee's signature, and forward it to the Facility Manager/designee of the other facility;

   e. the Facility Manager/designee at the recipient inmate's facility shall review the **Correspondence Between Inmates Form** and determine whether to approve the request to correspond;

   f. if both Facility Managers/designees approve the request, a copy of the **Correspondence Between Inmates Form** shall be placed in the **DC-14, Counselor File**, a notation shall be made in the automated Inmate Cumulative Adjustment Record (ICAR), and the mailroom supervisors at both facilities shall be notified; and, when inmates have been permitted to correspond because of a pending legal case, the Mailroom Supervisor shall verify the status of the case with the Department's Office of Chief Counsel every six months. Unless permission to correspond has been otherwise terminated, the Mailroom Supervisor shall notify every staff member who was designated to receive a copy of the **Correspondence Between Inmates Form** approving the correspondence when the case has been completed and the permission to correspond will be terminated;

   g. the inmates must refrain from mentioning facility security, staff, or inmates in their communication;

   h. the facility may read both incoming and outgoing correspondence between the inmates, to ensure compliance with the conditions of these procedures;

   i. permission to correspond with an inmate at a facility under the Department's jurisdiction or the jurisdiction of any other state, county, or federal agency or contractor or a juvenile in a detention center shall be reviewed by the Facility Manager/designee at least every six months and may be withdrawn at any time; and

   j. permission to correspond granted at one facility shall transfer with the inmate to any other Department facility; however, any approval granted or transferred may be

1-4

revoked for changed circumstances and affected parties shall be notified by the Facility Manager/designee.

7. Each inmate will be permitted, without cost, to mail eight, one-ounce, first-class letters per month.[4]

8. There will be no limit on the number of letters that an inmate may send at his/her own expense.[5] Envelopes are available for purchase through Commissary. If an inmate has purchased envelopes prior to a transfer to another facility, the inmate shall be allowed a one-for-one exchange of envelopes upon arrival at the new facility.

9. No threatening, obscene, or if the inmate is under the age of 18, explicit sexual material, pictorial nudity, contraband, material containing a criminal solicitation, or material describing or in furtherance of a criminal plan or misconduct offense may be contained in the mail or placed on the envelope. If opened, such mail/envelope shall be returned to the sender at the inmate's expense (except that material which cannot be mailed legally will not be returned) or disposed of at the inmate's expense.

10. All outgoing mail shall include on the envelope the fully-approved inmate name, Department inmate number, and return address printed in a legible, undisguised manner on the upper, left-hand corner of the envelope. An envelope not bearing this information will be opened and returned to the inmate, if identified. Non-privileged correspondence shall include the central incoming inmate mail processing center return address as listed above. Privileged correspondence will have the facility mailing address with the inmate's name and number as the return address. EXCEPTION: To preserve the confidentiality of inmates reporting allegations of sexual assault to the Pennsylvania State Police (PSP), an envelope addressed to: BCI/PREA Coordinator, 1800 Elmerton Avenue, Harrisburg, PA 17110 is not required to include the inmate name or Department number. **[28 C.F.R. §115.51(b)]** PSP has asked that an inmate reporting an allegation of sexual assault include his or her name and inmate number within the body of the letter contained inside the envelope so that PSP can identify the person making the allegation and communicate with them as PSP deems necessary.

11. All outgoing correspondence will be stamped "Inmate Mail – PA. DEPT. OF CORRECTIONS."

12. The inmate shall seal and place all outgoing correspondence in the collection boxes provided in each housing unit and/or other designated locations.

13. Photographs containing obscenity, explicit sexual material, or nudity, as specified in **Section 2** of this procedures manual are prohibited.

14. No inmate may possess and the Department will not disseminate to any inmate obscene material in any form.

---

[5] 5-7D-4489, 4-ACRS-6A-06
[6] 5-7D-4488

15. In accordance with 18 Pa. C.S.A. §5903, the Department will not disseminate obscene, nude, or explicit sexual materials in any form to an inmate under the age of 18. Any inmate under the age of 18 found to be in possession of obscene or explicit sexual materials will be subject to a misconduct in accordance with Department policy **DC-ADM 801, "Inmate Discipline."**

## B. General Incoming Inmate Mail Procedures

1. Inmate mail will be refused for the following reasons:

   a. non-privileged inmate correspondence that is sent to a prison instead of to the Department's contracted central mail processing center;

   b. mail that has postage due;

   c. mail that does not contain a return address consisting of the sender's name, street address, including a suite or apartment number as applicable, city, and state (the official state abbreviation may be used). Correspondence from a foreign country must also include the name of the foreign country; and

   d. incoming mail for an inmate that is not addressed with the approved inmate name and Department number as reflected on the inmate roster. If an inmate has been transferred or released, mail shall be forwarded, unopened, to the new address, if known, for 60 days.[6]  If no forwarding address is available, mail shall be refused. It is the responsibility of the inmate to notify correspondents of a change of address.

2. When the delivery of incoming correspondence has been accepted and any item other than a publication contained therein is determined to be prohibited:

   a. the copies of permitted contents shall be delivered to the inmate. The mailroom staff shall complete and send to the inmate a **Notice of Unacceptable Correspondence Form (Attachment 1-B)**. A copy of the **Notice of Unacceptable Correspondence Form** shall be sent to the Security Office at the facility and to the sender of the correspondence, if identifiable;

   b. the inmate may file a grievance from the **Notice of Unacceptable Correspondence Form** within 15 working days of the date the Notice is sent. The inmate shall use the **DC-804 Part 1, Official Inmate Grievance Form**; the sender shall appeal by writing a letter addressed to the Facility Manager, containing a copy of **the Notice of Unacceptable Correspondence Form** and clearly stating the reason the sender believes the correspondence should have been accepted;

   c. the grievance shall be assigned for processing pursuant to the procedures in **Department policy DC-ADM 804, "Inmate Grievance System,"** which are available

---

[6] 5-7D-4496, 4-ACRS-6A-09

Issued: 10/3/2018
Effective: 10/3/2018

online at the Department's official website www.cor.pa.gov and the appeal process set forth therein shall govern all subsequent levels of challenge;

d.  upon receipt of the grievance, the grievance officer shall issue notification to the mailroom, security office, or contracted mail processing center, as appropriate, identifying the prohibited item at issue and directing that the item(s) be held pending the outcome of the grievance or related processes;

e.  the mailroom, security office, or contracted mail processing center shall hold the prohibited items pending further notification from the grievance officer; and

f.  upon resolution of the matter, the grievance officer will inform the mailroom, security office, or contracted mail processing center of the outcome:

   (1)  if the item is permitted, the mailroom, security office, or contracted mail processing center shall cause copies of the prohibited/item(s) to be delivered to the inmate; and

   (2)  if the item is not permitted, the inmate (if known) will be permitted to mail it out of the facility at the inmate's expense. If the inmate refuses to pay for the item to be mailed, Department staff will destroy the item(s), hold the correspondence item(s) for investigation, as evidence, or otherwise properly dispose of it. Material that cannot be legally mailed will not be sent.

3.  Incoming correspondence may contain copies of internet pages, news clippings, articles, print-outs, or material from social networking, social media, or internet sites if such material otherwise complies with the provisions of this procedures manual. The content of internet pages, news clippings, articles, print-outs, or material from social networking, social media, or internet sites will be reviewed by Department staff. Content that may violate the criteria set forth in **Section 2** of this procedures manual below shall be forwarded to and reviewed by the Inmate Publication Review Committee (IPRC).

4.  Incoming correspondence may contain photographs subject to the following limitations:

a.  no more than 25 photographs may be contained in any mailing. Any item of correspondence that has more than 25 photographs will be returned in its entirety;

b.  the content of photographs will be reviewed by Department staff. Content that may violate the criteria set forth in **Section 2** of this procedures manual below shall be forwarded to and reviewed by the IPRC. The IPRC shall issue a **Notice of Photo Denial Form (Attachment 1-C)** with notice to the sender and the inmate in all cases where photographs are denied based upon content;

c.  nothing in this policy shall be interpreted to permit an inmate to possess more photographs than permitted by the policy governing the inmate's housing status; and

Issued: 10/3/2018
Effective: 10/3/2018

d. as with all incoming correspondence, photographs will be copied and the copies will be provided to the inmate. Original photographs will not be returned or preserved. Rather, original photographs are subject to the retention and disposal cycle for incoming non-privileged correspondence provided in this procedures manual.

5. Incoming inmate mail will be processed Monday through Friday excluding state/federal holidays as outlined below. Mail will be scanned by the Department's contracted vendor and an electronic copy will be made available to the appropriate facility. Facility staff will print the correspondence and deliver it to the inmate. A reasonable effort shall be made to ensure that incoming inmate mail is delivered to the inmate on the same day that it is received from the Department's contracted incoming inmate mail processor, excluding weekends and holidays, unless the mail contains content requiring review by the IPRC in accordance with **Section 2** of this procedures manual or the mail is being held for investigative purposes.

   a. An inmate who wishes to have his/her mail held by the mailroom while on an Authorized Temporary Absence (ATA) must submit a written notice to the mailroom supervisor. A **DC-135A, Inmate's Request to Staff Member** may be used for this purpose.

   b. Any inmate who receives a letter of a disturbing nature should bring the matter to the attention of the housing unit officer and make arrangements to discuss the problem with his/her unit manager or counselor.

## C. Incoming Inmate Mail Procedures – Non-Privileged Mail

1. All incoming inmate mail (other than privileged) must be sent to the Department's contracted incoming inmate mail processor as stated in **Subsection A. above**.

2. Contracted mail processing center staff will open and scan each piece of incoming inmate correspondence. Staff will not read incoming correspondence unless authorized to do so under the applicable provisions of this policy or as specifically directed by authorized Department staff. Correspondence from the Department's Office of Chief Counsel is not privileged and is to be opened in accordance with this process.

3. Contracted mail processing center staff will electronically transmit the scanned copies of the inmate incoming mail to appropriate facility staff.

4. The contracted mail processing center shall retain the following records related to the processing of inmate incoming mail in accordance with the following periods:

   a. the original incoming correspondence will be securely maintained for 45 days and then securely destroyed unless otherwise directed by the Department; and

   b. scanned electronic copies of the incoming correspondence will be securely maintained for 45 days and then securely destroyed unless otherwise directed by the Department.

5.  Facility staff will print and deliver paper copies of the incoming inmate correspondence to the inmate recipients. Staff will not read incoming correspondence unless authorized to do so under the applicable provisions of this policy or as specifically directed by authorized Department staff.

6.  Incoming correspondence, other than privileged correspondence, may be read or reviewed upon the written order of the Facility Manager/designee. Incoming correspondence, other than privileged correspondence, may be reproduced upon written order of the Executive Deputy Secretary for Institutional Operations (EDSI)/Regional Deputy Secretary only when there is reason to believe that the security of the facility may be threatened, that this directive is being violated, that there is evidence of criminal activity or of a misconduct offense, or in connection with an investigation being conducted by the Bureau of Investigations and Intelligence (BII).[7]

7.  The Facility Manager/designee shall review the status of the facility's mail monitoring on a monthly basis. In cases where the Regional Deputy Secretary's approval is required, a request must be made in writing every 60 days for continued reproduction of correspondence. This request should also include a brief update of the ongoing investigation.

    a.  The facility Security Office shall submit a quarterly report to the Regional Deputy Secretary outlining all inmate correspondence being monitored/reproduced on the **Inmate Correspondence Tracking Form (Attachment 1-D)**.

    b.  If approved by the EDSI/Regional Deputy Secretary, the Chief of Security/BII/designee will notify the Facility Manager/designee and the Intelligence Gathering Captain to commence monitoring and/or photocopying the correspondence. A request must be made in accordance with **Subsection C.6. above** to continue reproduction of correspondence.

8.  Federal, State, and local income tax filing documents shall not be delivered to an inmate, as these may be used to file fraudulent tax returns. If an inmate has a legitimate need to file a tax return, he/she may request the proper forms from the Unit Management Team.

9.  When a refund check from the Pennsylvania Treasury Department, another state, the Internal Revenue Service (IRS), a foreign country, or a county or municipality of any of the preceding is received, mailroom staff shall notify the Intelligence Gathering Captain/Security Lieutenant. If issued by the Commonwealth, these checks are identifiable by the address information that shows through the window on the envelope, REVREFUND, is printed and visible. For a United States or Commonwealth check, the Intelligence Gathering Captain/Security Lieutenant shall contact the PA Department of Revenue/IRS Office of Criminal Tax Investigations and advise them of the inmate's name, social security number, and check amount. The PA Department of Revenue and/or IRS representative will advise the Security Office as to the legitimacy of the

---

[7] 5-7D-4491, 4-ACRS-6A-08

Issued: 10/3/2018
Effective: 10/3/2018

refund. The Office of Chief Counsel shall be contacted if tax refund checks are received from other sources.

10. The contracted mail processing staff shall forward to the Department the original of any official documents such as a driver's license, birth certificate, social security card, welfare card, medical card, etc., received in the incoming inmate correspondence. Such documents shall not be delivered to the inmate, but shall be transferred to a designated safe, area, or file and maintained by the Department at the appropriate Facility business office. Department staff shall notify the inmate and his/her counselor of the document being held.

11. When any documentation concerning Uniform Commercial Code (UCC) filings, the redemptive process, "Acceptance for Value" presentments, or documents indicating copyright or attempted copyright of a name is received, mail processing staff shall notify the Intelligence Captain/Security Lieutenant. A **Notice of Unacceptable Correspondence Form** shall be completed and sent to the inmate and the sender, if identifiable. The inmate shall have 15 working days from the date of the notice to provide, in writing, to the Intelligence Captain/Security Lieutenant an explanation of the legal basis or purpose for his/her possession of the material. In the alternative, the inmate may choose to file a grievance under Department policy **DC-ADM 804** explaining the legal basis or purpose for his/her possession of the material. Any and all documents or materials referenced in this paragraph shall be confiscated and considered contraband, whether processed through the mailroom or found anywhere else within the facility.

12. Account Statements

    a. Inmate Savings/Investment Accounts

       (1) An inmate is permitted to maintain a savings account that was opened prior to his/her incarceration. An inmate who maintains such an account may receive copies of account statements and correspondence from the financial institution holding the account, provided that he or she informs the facility's mailroom supervisor of the name of the financial institution.

       (2) An inmate is permitted to open one savings account during his or her incarceration. An inmate who maintains such an account may receive copies of account statements and correspondence from the financial institution holding the account, provided that he or she informs the facility's mailroom supervisor of the name of the financial institution.

       (3) An inmate is permitted to open one investment account during his or her incarceration. An inmate who maintains such an account may receive copies of account statements and correspondence from the licensed investment professional through whom the account is established, provided that he or she informs the facility's mailroom supervisor of the name of the licensed financial institution or licensed investment professional through whom the account is established.

(4)     All savings/investment account passbooks and account identification (e.g., account identification card, check cashing, etc.) shall be held by the facility Business Office until the inmate is released.

(5)     Savings/investment account statements and deposit and withdrawal slips may be held by the inmate with his/her personal property, unless there is reason to believe that there is a threat to facility security or criminal activity, in which case, the materials will be considered contraband.

b.   Inmate Checking Accounts

(1)     An inmate with a checking account opened prior to his/her incarceration shall not use the account while incarcerated.

(2)     The opening of a checking account while incarcerated is prohibited.

c.   Inmate Credit or Charge Account or Debit Account

(1)     An inmate with a charge card, credit card account, or debit account opened prior to his/her incarceration shall not charge to the account or make expenditures from the account while incarcerated.

(2)     The opening of a charge card, credit card account, or debit account while incarcerated is prohibited.

(3)     "Blank checks" or "cash advance vouchers" associated with charge and credit card accounts or debit accounts are considered contraband, and shall not be provided to inmates.

(4)     Credit or charge account or debit account solicitations and applications are considered contraband, and shall not be provided to inmates.

(5)     Account statements for inmates who opened a charge card, credit card account, or debit account prior to incarceration, may be held by the inmate with his/her personal property, unless there is reason to believe that there is a threat to facility security or criminal activity, in which case, the materials will be considered contraband and confiscated by staff.

d.   Other Investments

(1)     An inmate is prohibited from acquiring or transferring stocks, bonds, or any other form of security or investment other than as set forth in **Subsection A.8.a.(3) above.**

(2)     An inmate who wishes to transfer stocks, bonds, or any other form of security or investment acquired prior to his or her incarceration must place the security under the control of a third party who is neither an inmate nor a parolee.

Issued: 10/3/2018
Effective: 10/3/2018

### D. Incoming Inmate Mail Procedures – Privileged Mail

1. Processing of incoming privileged correspondence.

   a. Incoming privileged correspondence will be opened and inspected for contraband in the presence of the inmate to whom it is addressed.

   b. The incoming privileged correspondence will then be photocopied in the presence of the inmate and the photocopies of the contents shall be delivered to the inmate.

   c. Incoming privileged correspondence delivered to an inmate as described above is to be noted on the **Legal Mail Log (Attachment 1-E)**. The inmate must sign the **Legal Mail Log** for the mail or the fact that the inmate refused to sign shall be noted.

   d. The original incoming privileged correspondence (including the original envelope or packaging) will be sealed in a manila or opaque envelope(s) in the presence of the inmate. The envelope(s) shall be secured with evidence tape.

   e. The envelope(s) will be marked with the inmate's name and number and the sealed envelope(s) will be deposited into a locked/secured receptacle as described in this paragraph to be securely and confidentially destroyed.

      (1) Receptacle. Each facility will be responsible to procure the services of a vendor for the confidential destruction of the sealed incoming inmate privileged correspondence. The facility should contact the Central Office business office to ensure that its contract for such services is appropriate. The vendor shall provide a locked/secured receptacle. Only the vendor shall have the ability to unlock/access the receptacle.

      (2) In the event that an inmate files a timely request necessitating access to the original privileged correspondence, Department staff will request that the vendor access the receptacle and provide the requested sealed correspondence to Department staff. The correspondence will then be opened in the presence of the inmate in accordance with the procedures for processing incoming privileged mail as outlined in this subsection. If the inmate requests that the original privileged correspondence be preserved pursuant to a grievance, the original privileged correspondence will be retrieved as described above and maintained in the security office evidence locker with a chain of custody log. It shall not be opened outside of the presence of the inmate.

      (3) The original incoming privileged correspondence will be securely maintained for 45 days and then securely destroyed by the contracted vendor unless otherwise directed by the Department, pursuant to a timely request from an inmate to access or preserve his/her original privileged correspondence.

   f. The processing of incoming privileged mail as described in this subsection shall be video recorded. The video recording shall record the activity of Department staff and

the inmate; it shall not record the contents of the privileged correspondence. Video records will follow the same retention and destruction cycle as the privileged correspondence.

2. If upon opening the envelope in the presence of the inmate, the staff member, without reading the contents, notices that the envelope contains absolutely no legal material (e.g., contains only a publication readily available to the public with no notations from counsel), the staff member shall not issue the contents to the inmate and shall complete a **DC-121, Part 3, Employee Report of Incident**, in accordance with Department policy **6.3.1, "Facility Security."** The report shall include: the contents that were deemed not to be legal material; the name and Department number of the inmate who received the mail; and the name and address of the person who sent the mail. The Facility Manager/designee shall forward a copy of the staff member's report to the Office of Chief Counsel and the Central Office Security Division for review and tracking.

3. Incoming privileged correspondence may be read upon the written approval of the Secretary/designee when there is reason to believe that there is a threat to facility security or criminal activity.

4. In cases where the Secretary's approval to read incoming privileged correspondence is required, a request must be made in writing every 30 days for continued reproduction of correspondence. This request should also include a brief update of the ongoing investigation.

## E. General Outgoing Inmate Mail Procedures

1. Outgoing mail placed in housing unit collection boxes or other designated locations shall be collected each day, Monday through Friday, excluding state/federal holidays. A reasonable effort shall be made to ensure that such mail is delivered to the U.S. Postal Service on the same day.

2. Outgoing mail shall NOT be placed in the lock-boxes designated for inmate grievances and/or **DC-135A, Inmate's Request to Staff Member** forms.

3. The inmate will be notified when outgoing mail is being held.[8]

## F. Outgoing Inmate Correspondence Procedures – Non-Privileged Correspondence

1. The Facility Manager/designee may authorize the opening and reading of outgoing correspondence other than privileged correspondence only when there is reason to believe that the security of the facility may be threatened, that this directive is being violated, there is evidence of criminal activity or of a misconduct offense, or in connection with an investigation being conducted by the BII. [9]

---

[8] 5-7D-4491
[9] 5-7D-4491, 4-ACRS-6A-08

2. Outgoing correspondence other than privileged correspondence may be reproduced upon written approval of the Regional Deputy Secretary only when there is reason to believe that the security of the facility may be threatened, this directive is being violated, there is evidence of criminal activity or of a misconduct offense, or in connection with an investigation being conducted by the BII. If the request to reproduce the correspondence originated with BII or the Central Office Chief of Security, the Chief of Security/BII/designee will notify the Facility Manager/designee and the Intelligence Gathering Captain to commence monitoring and/or photocopying the correspondence upon approval of the EDSI/Regional Deputy Secretary. A request must be made in accordance with **Subsection A.2 above** to continue reproduction of correspondence.

3. The facility Security Office shall submit a quarterly report to the EDSI/Regional Deputy Secretary outlining all inmate correspondence being monitored/reproduced on the **Inmate Correspondence Tracking Form**.

## G. Outgoing Privileged Correspondence[10]

1. Outgoing privileged correspondence will not be opened, read, censored, or reproduced outside the presence of the inmate, except under the following conditions:

   a. the Facility Manager/designee may request, in writing, the opening, reading, censoring, and/or reproducing of outgoing privileged correspondence outside the inmate's presence and transmit the request to the Secretary/designee and set forth the reasons for the request; and

   b. the Secretary/designee may grant permission to open, read, censor, and/or reproduce outgoing privileged correspondence outside of the inmate's presence only when there is reason to believe there is a threat to facility security or criminal activity including, but not limited to, the following:

      (1) any information relating to a possible escape;

      (2) the introduction of weapons, drugs, money, or other contraband that presents a clear threat to the security of the facility;

      (3) any information relating to a possible prison disturbance or other activity that presents a clear threat to the security of the facility; and

      (4) any information relating to other criminal activity; specifics of the suspected activity must be provided.

2. A log shall be kept of instances where outgoing privileged correspondence is opened, read, censored and/or reproduced, and the inmate shall be notified unless such notification would impede an investigation of a threat to facility security including a misconduct offense or suspected criminal activity. The inmate shall be notified that

---

[10] 5-7D-4492

his/her mail was opened, read, censored, and/or reproduced at the completion of the investigation.

## H. Electronic Mail (Email)

1. All inmate emails are monitored by a software program designed to alert staff if an email contains inappropriate content. The email system contains disclaimers to advise all users that the content of the communications are subject to monitoring. The email system is not designed or intended to be used to facilitate privileged communication. Privileged communications should be made through the inmate telephone, regular mail, or visiting processes.

2. Facility mailroom staff shall forward any email that contains inappropriate content to the facility Security Office for review.

3. The facility Security Office shall review the email content for threats to the security of the facility, evidence of criminal activity, or any violations of this procedures manual.

4. If the facility Security Office has determined that the email is not a threat to the security of the facility, evidence of criminal activity, or in violation of this procedures manual, it will be returned to the mailroom to be delivered to the inmate.

5. Email may be read and reproduced by the facility Security Office, the Central Office Security Office, and/or the BII.

6. Any inappropriate email will be rejected with a notice to the sender stating:

   The referenced message was rejected as containing inappropriate content. If you wish to appeal the rejection you must send a written appeal to the Facility Manager within 15 working days of this message. Further information is available in Department policy DC-ADM 803, Section 2, which can be found at www.cor.pa.gov.

## I. Presorted Standard Mail

Magazines and newspapers sent by Presorted Standard Mail will be accepted and reviewed according to the Department's policies and procedures.

## J. Certified or Registered Mail

1. Each facility shall establish procedures in cooperation with the local Postmaster for the processing of certified and registered mail.

2. The inmate is responsible for determining whether mail is to be sent via certified or registered mail.

Issued: 10/3/2018
Effective: 10/3/2018

3.  Unless otherwise provided in this procedures manual, the inmate must have funds available in his/her account and an approved cash slip for such postage payment in order to send mail certified or registered.

## K. Stationery, Pen, and Postage for Indigent Inmates

Upon written request, an indigent inmate, as defined in the Glossary of Terms, shall be provided with stationery and a pen, and shall be able to anticipate the cost for postage to file papers necessary for the good faith pursuit of legal remedies.[11]

1.  No-Cost Stationery and Pens

    a.  An inmate may submit a **DC-135A** for no-cost stationery to the Facility Business Manager/designee. The request shall contain:

        (1)  the date of the request;

        (2)  whether a pen is needed;

        (3)  the current balance in his/her inmate facility account, if known; and

        (4)  the name of the court in which the case is pending, the case/docket number, the caption/title of the case, and type of case.

    b.  The Business Manager/designee shall review the information contained in the **DC-135A**, and verify that the inmate has insufficient funds to purchase the needed material.

    c.  The Business Manager/designee shall respond to the request within five working days of receipt.

    d.  Upon approval, the inmate shall be provided free of charge:

        (1)  a pen of the type permitted under the policy and rules governing the inmate's housing unit; and

        (2)  a packet of 50 sheets of clean 8 ½" x 11" paper. If the quantity of paper proves to be insufficient, the inmate may submit a request for one more additional packet per month.

2.  Postage and Copying

    a.  Anticipated Postage

---

[11] 5-3D-4274, 5-3D-4276, 4-ACRS-6A-06

(1) An indigent inmate may anticipate on his/her account, postage for legal mail, to include exhaustion of grievances, and copying charges up to $10 per month.[12] Under no circumstances, shall the Business Manager/designee approve requests in excess of $10 per month. An inmate is responsible for managing his/her funds and monthly postage allowance to meet his/her legal needs.

(2) The Business Manager/designee shall respond to a request to anticipate postage within five working days of receipt.

(3) After all deductions are taken in accordance with Department policy **DC-ADM 005, "Collection of Inmate Debts"** any money received in an inmate's account shall be used to satisfy the postage debt and copying fees.

b. Postage Limitations

An indigent inmate will be permitted to anticipate the deposit of funds into his/her account for regular first-class postage only except that:

(1) a "Petition for Review" to respondents and filed in the Commonwealth Court is the only legal document required to be served by <u>certified mail</u>. An inmate may anticipate funds to file and serve a Petition for Review by <u>certified mail</u> and may also anticipate funds to include a <u>return receipt</u> for the certified mail if the inmate chooses to do so;

(2) an inmate may not be permitted to anticipate the deposit of funds into his/her account to mail documents in any case in which he/she is not a party;

(3) any misuse of postage and incomplete or false requests shall be grounds for disapproval of any further anticipation for postage and for discipline; and

(4) the inmate may seek review of any decision regarding this Section as outlined in Department policy **DC-ADM 804.**

## L. Inmates Who Regularly Use Names Different from the Name on the Commitment Form

1. An inmate who has made a permanent legal change in his/her name, so that it differs from the commitment name, may submit a request to the Facility Manager for permission to use the new name for limited purposes. This request must include the reason(s) why the inmate wishes to use the new name.

2. The Facility Manager shall review and grant permission for limited use of the approved name if the name was changed for legitimate reasons. Legitimate reasons shall include changes because of change in gender, marital status, religious reasons, and ethnic identification. Only permanent name changes will be approved. Multiple changes will not be honored.

---

[12] 4-ACRS-6A-06

Issued: 10/3/2018
Effective: 10/3/2018

*DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual*
*Section 1 – Mail Processing Procedures*

3. The Facility Manager shall notify the inmate of his/her decision on the request to use the new approved inmate name. If the request is approved, the Facility Manager shall inform the inmate in writing of the permitted uses of the newly approved inmate name. The Facility Manager shall advise the inmate that the newly approved inmate name may not be used to mislead or commit fraud and that abuse of the guidelines established for this procedure may result in withdrawal of approval to use the newly approved inmate name. If this request is disapproved, the Facility Manager shall explain the reasons for disapproval.

4. The facility is not required to permit an inmate to use a new name, which has not been approved by these procedures.

5. The newly approved inmate name shall be added to the inmate's records as an AKA (also known as). No Department records will be changed absent a court order specifically directing that the records be changed. If such an order is issued, it shall be referred to the Office of Chief Counsel for review. This type of change will not be handled pursuant to the procedures established here. A court order authorizing and ordering a change of name does not automatically mandate changes in existing records.

6. When an inmate changes his/her name, the Records Office shall notify the Office of Victim Advocate (OVA) and the Parole Supervisor at the facility.

7. The inmate must continue to respond when addressed by his/her commitment name and to sign the commitment name for all purposes except those listed below.

   a. A visitor may identify the inmate he/she wishes to visit by using the newly approved inmate name.

   b. The inmate may execute a **DC-155, Power of Attorney** authorizing the endorsement of checks in the newly approved inmate name. A notation shall be made on the second form indicating this form does not supersede the **DC-155** under the commitment name, but is only additional authorization.

   c. After the execution of the new **DC-155** the inmate may receive deposits to his or her inmate account using the newly approved inmate name.

   d. It is the inmate's responsibility to advise any person who wishes to use the newly approved inmate name for the purposes described above that he/she must, whenever using the newly approved inmate name, also provide other data; inmate number and commitment name, so that the facility can identify the inmate. A visitor, correspondence, or publication that does not present or contain data sufficient to identify the inmate may be disapproved.

   e. It is the inmate's responsibility to change his/her name on his/her social security card using the procedures required by the Social Security Administration (SSA) (refer to Department policy **7.3.1, "Reentry and Transition"**). The Department has been informed that a new card will be issued with the inmate's original social security

number. A new number is not issued for a name change. The inmate will have to send the original Court Order that grants the legal name change with the application for name change. Photocopies or notarized copies of documents are not accepted.

8. An inmate shall be issued and charged for the replacement ID card in accordance with Department policy **6.3.1** when he or she has been authorized to use a newly approved inmate name.

9. The inmate shall be charged $10 for a new fingerprint card that is required for a name change.

10. Abuse by the inmate of any of these guidelines shall be treated as disobedience of a direct order, and may be grounds for revocation of permission to use the newly approved inmate name, and for disciplinary action.

11. An inmate may seek review of a decision pursuant to these procedures by filing an inmate grievance under Department policy **DC-ADM 804**.

## M. Inmate Organization Correspondence

1. Only approved inmate organizations as defined by Department policy **7.8.1, "Inmate Recreational and Therapeutic Activities"** may send and receive mail.

2. Payment of postage is the responsibility of the inmate organization.

3. All incoming and outgoing inmate organization correspondence must be reviewed and approved by the facility staff coordinator for the organization.

4. All outgoing correspondence must be reviewed by the staff coordinator for the organization to ensure compliance with Department policies.

5. Outgoing correspondence must be sealed and delivered to the mailroom by the staff coordinator.

6. An inmate organization may not send mail to an inmate of any federal, state, or county prison or of any juvenile detention center.

Issued: 10/3/2018
Effective: 10/3/2018

## Section 2 – Publications

**Section 2** is under review and will be published shortly. In the interim, the following content standards and processes remain in effect.

### A. Incoming Publications[1]

   1.  Criteria

      a.  General

         (1)  A request for and receipt of any publication or photograph may be disapproved when the publication or photograph contains content considered to pose a potential threat to security, contains nudity, explicit sexual materials, or obscene material as set forth in **Subsection A.1.c. below**.

         (2)  No publication shall be prohibited solely on the basis that the publication is critical of penal facilities in general, of a particular facility, an official of the Department or of a correctional or penological practice in this or in any other jurisdiction.

         (3)  Recognized original source textbooks in chemistry, physics, or the social sciences, shall be permitted as long as these publications adhere to the criteria outlined below.

         (4)  Any publication that contains one or more sections dealing with prohibited topics must be disapproved in its entirety. If a publication is disapproved because of a section(s) dealing with prohibited topics, facility staff may not alter the publication by removing the prohibited section(s) in an attempt to make the publication acceptable. The publisher may alter the publication by removing the prohibited section(s), republishing the publication, and resending it to the inmate. Any resubmitted publication shall be reviewed as though it was being submitted for the first time.

      b.  Security Issues

      Written narratives/language and/or visual/graphic representations/images containing any of the following content shall be denied:

         (1)  information regarding the manufacture of explosives, incendiaries, weapons, escape devices, or other contraband;

         (2)  instruction regarding the ingredients or manufacture of poisons, drugs, or intoxicating beverages;

---

[1] 5-7D-4490

(3) writings which:

    (a) advocate violence;

    (b) advocate insurrection or guerrilla warfare against the government or any of its facilities;

    (c) create a danger within the context of the correctional facility; or

    (d) advocate, assist, or are evidence of criminal activity or facility misconduct.

(4) racially inflammatory material, material that could cause a threat to the inmates, staff, or security of the facility, material that encourages or promotes the belief that one group of persons is superior over another, or describes rites or ceremonies that include instruments that could be used to cause harm to one's self or others, except if this material is contained in religious material or a sacred text in which case it must be reviewed using the criteria set forth in **Subsection A.1.d. below**; or

(5) maps, road atlas, etc. that would facilitate the planning of an escape or criminal activity or would pose a security threat to the Department, its staff, contractors, volunteers, or facilities.

c. Publications and Photographs Containing Obscene Material, Explicit Sexual Material, and Nudity

(1) Except as provided below, correspondence, publications and/or photographs containing explicit sexual material (other than in narrative form), and/or nudity as defined in the Glossary of Terms, are prohibited from entering a facility or being possessed within a facility. Obscene material is illegal and will not be permitted under any circumstances.

(2) Correspondence and publications, containing nudity or explicit sexual material (other than in narrative form), as defined in the Glossary of Terms may be permitted if the material has artistic, educational, or medical value. The below listed considerations will guide the Department in determining whether to permit nudity, explicit sexual material, or obscene material:

    (a) Is the material in question contained in a publication that regularly features sexually explicit content intended to raise levels of sexual arousal or to provide sexual gratification, or both? If so, the publication will be denied for inmate possession.

    (b) Is it likely that the content in question was published or provided with the primary intention to raise levels of sexual arousal or to provide sexual gratification, or both? If so, the publication or content will be denied for inmate possession.

d.  Religious Materials and Sacred Texts

(1)  Religious material and sacred texts that contain otherwise prohibited material shall be prohibited if they explicitly direct followers to act violently or encourage violent acts against Lesbian, Gay, Bisexual, Transgender, Intersex (LGBTI) populations, persons of other races, nationalities, religions, etc. or direct the use of instruments to cause harm to one's self or others. Religious material and sacred texts that only promote a sincerely held belief, as opposed to directing followers to act on that belief, shall be permitted.

(2)  The below listed considerations will guide the Department in determining whether religious material and sacred texts are to be permitted or prohibited:

(a)  Does the religious material or sacred text contain racially inflammatory material or encourage or promote the belief that one group of persons is superior over another or contain descriptions of religious rites or ceremonies that may include instruments that could be used to harm one's self or others?

i.  If not, the religious material or sacred text must be permitted.

ii.  If so, does the religious material or sacred text explicitly direct followers to act violently or encourage violent acts against persons of other races or nationalities, etc. or to use instruments to harm ones self or others? Only religious material or a sacred text that explicitly directs followers to act violently or encourages violent acts can be prohibited.

(b)  The Incoming Publication Reivew Committee (IPRC) may consult with the Facility Chaplaincy Program Director (FCPD) in evaluating religious publications and sacred texts. The Secretary's Office of Inmate Grievances and Appeals (SOIGA) shall consult with the Religious Accommodation Review Committee in reviewing appeals from the denial of religious publications or sacred texts.

2.  Review Process

a.  Inmate Grievance Review

(1)  An inmate may seek review of a decision denying a publication by filing a grievance in accordance with Department policy **DC-ADM 804, "Inmate Grievance System."** If a timely grievance is not filed, the publication will be destroyed after 30 working days unless:

(a)  the inmate submits a cash slip for the costs of shipping the publication out of the Department to a specific person within 15 working days; or

2-3

        (b)    the publisher submits a timely permitted appeal under **Subsection A.4. below**.

           **NOTE**: The only publications that appear on the Department's Reviewed Publication List are those that have received final content review either as the result of an inmate grievance or a publisher appeal. The Department will not re-review the content of publications on the Department's Reviewed Publication List. Grievances regarding publications that appear on the Department's Reviewed Publication List, therefore, are limited to whether the Department's Reviewed Publication List was applied correctly (e.g., the denied publication does not actually appear on the Department's Reviewed Publication List) or that a Pennsylvania court or a United States District Court within Pennsylvania (Eastern, Middle, or Western District), the United States Court of Appeals for the Third Circuit, or the United States Supreme Court has entered an order requiring that the specific publication be permitted in a prison housing persons convicted of a felony.

    b.    The Facility Grievance Coordinator shall notify the Mailroom Supervisor when a grievance concerning the denial of a publication is filed and shall inform the Mailroom Supervisor of the final decision when the grievance process, including any appeals, is completed.

        (1)    The Mailroom Supervisor shall hold the publication until the grievance process, including grievance appeals, if any, is completed.

        (2)    SOIGA shall refer grievance appeals challenging the denial of a publication for content reasons to the Office of Policy, Grants, and Legislative Affairs for review.

        (3)    The Office of Policy, Grants, and Legislative Affairs shall review all content-based appeals, advise SOIGA of its determination, return the grievance and related material to SOIGA, and add the final appeal decision to the Department's Reviewed Publication List.

        (4)    SOIGA shall notify the inmate of the final appeal decision.

    c.    Publisher Appeals

        (1)    A publisher may seek review of a decision denying a publication by filing an appeal to the Office of Policy, Grants, and Legislative Affairs within 15 working days of the date on the **Notice of Incoming Publication Denial Form (Attachment 2-B)**. An appeal may be in the form of a letter setting forth the reasons the publisher believes the decision to deny the publication was erroneous and must include a copy of the **Incoming Publication Denial Form** the publisher received. The Office of Policy, Grants, and Legislative Affairs may, in its sole discretion, accept an untimely appeal for demonstrated good cause. Multiple appeals by the publisher of the same issue of a publication are prohibited and shall be disregarded.

*DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual*
*Section 2 – Publications*

    (2)    The Office of Policy, Grants, and Legislative Affairs shall notify the Mailroom Supervisor at the inmate addressee's facility that the publisher's timely appeal has been received.

    (3)    The Mailroom Supervisor shall hold the publication until the grievance process, including grievance appeals, if any, is completed.

    (4)    The Office of Policy, Grants, and Legislative Affairs shall decide a publisher's appeal within 15 working days of receipt. The Office of Policy, Grants, and Legislative Affairs shall forward its decision concerning a publisher's permitted appeal to the publisher and the Mailroom Supervisor at the inmate addressee's facility, and add the publication to the Department's Reviewed Publication List.

    (5)    The Office of Policy, Grants, and Legislative Affairs decision concerning a publisher's appeal is final.

  d.  Post-Appeal Procedures

    Upon completion of the grievance process or the publisher's appeal, or both, the publication shall be processed in accordance with the final decision.

Issued: 10/3/2018
Effective: 10/3/2018

**DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual**
**Glossary of Terms**

**Approved Inmate Name** – The name under which the inmate is committed to the Department and/or a name change that is in accordance with Department policy **11.5.1, "Records Office Operations."**

**Cashier's Check** – a check drawn by a bank and payable from the bank's own funds.

**Catalogue** – Printed material the primary purpose of which can reasonably be regarded as offering anything other than a publication for sale, loan, or exchange.

**Charge Card Account** – A charge card account is a financial arrangement with a merchant or company requiring the account holder to pay any balance on the account in full at the end of each month, and is subject to interest charges by the merchant or company (e.g., American Express or a Sears Charge Card.)

**Content** – As used in this policy, content refers to the substance of the writings, the words and what they mean, and also includes nude photos.

**Contraband** – An item that an inmate is prohibited from possessing or an item that an inmate is permitted to possess, but which has been altered or is being used for something other than its intended purpose.

**Control Number** – A number obtained through the Department's Office of Chief Counsel authorizing an attorney or court to use the Department's system designed to ensure facility security as well as essential, confidential attorney-client communications.

**Court** – The (1) Pennsylvania Supreme Court, including any justice of such court, the Prothonotary, and any division of such court, (2) Pennsylvania Superior Court and Commonwealth Court of Pennsylvania, including any judge of such courts, clerk of courts and Prothonotary of such courts and any division of such courts; (3) any court of common pleas, including any judge, clerk of courts, or Prothonotary of such court as well as the domestic relations and children and youth services divisions of such courts; (4) the Philadelphia Municipal Court, including any judge, Prothonotary or clerk of courts of such court; (5) any magisterial district court or magisterial district judge; (6) any federal district court, including any judge, clerk of court or marshal of such court; (7) any United States Court of Appeals, including any judge, clerk, marshal or division of such court; (8) the United States Supreme Court, including any justice, clerk, marshal or division of such court; (9) any analogous court of another state, including any judge, justice, division, office or official of such court; and (10) any administrative court or judge of any federal or state agency.

**Credit Card Account** – A credit card account is a financial arrangement with a bank or company allowing the account holder to maintain a balance on the account at the end of the month, and is subject to interest charges by the merchant or company (e.g., Visa or MasterCard).

**Department Reviewed Publication List** – A list maintained by the Department consisting of the name, date, publisher, and review discussion for all publications that have received final review after any appeal of a Facility Manager's decision to prohibit the publication.

1

**DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual**
**Glossary of Terms**

**Electronic Mail (Email)** – Mail that is sent electronically using a vendor contracted by the Department.

**Explicit Sexual Material** – Any book, pamphlet, magazine, printed matter, sound recording, explicit and detailed verbal description, narrative account, or other material of the following: (1) sexual conduct, which means acts of masturbation, homosexuality, sexual intercourse, sexual bestiality, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if the person is a female, breast; (2) sadomasochistic abuse, which means flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound, or otherwise physically restrained on the part of one so clothed; (3) sexual excitement, which means the condition of the human male or female genitals when in a state of sexual stimulation or arousal.

**Facility Mail Distribution System** – The system used to deliver and pick-up mail from inmates within the facility.

**Facility Manager** – The Superintendent of a State Correctional Facility or the Motivational Boot Camp, Director of a Community Corrections Center, or Director of the Training Academy.

**Incoming Publications Review Committee (IPRC)** – A committee of at least three facility personnel selected by the Facility Manager/designee at each facility that reviews incoming mail that may contain prohibited content. One member of the IPRC must be a librarian, teacher, or school principal.

**Indigent Inmate** – An inmate for whom the combined balances of his/her facility account and any other accounts are $10 or less at all times during the 30 days preceding the date on which the inmate submits a request to the person designated by the Facility Manager/designee. An inmate who refuses available work/school although he/she is physically able and not precluded from work/school by virtue of his/her housing status, is not indigent for the purposes of this policy and is not eligible for free stationery or to anticipate for postage. An inmate who is self-confined may also be considered as refusing available work although physically able as determined by the Program Review Committee (PRC). Any inmate who has funds in another account, which if deposited in his/her facility account would bring his/her balance to more than $10, is not indigent. Any inmate who has not made a good faith effort to manage his/her money so as to be able to pay the necessary costs of litigation himself/herself is not indigent.

**Investment Account** – Any brokerage, individual retirement, or similar account through which a licensed investment professional buys and sells stocks, bonds, mutual funds, and other investments on the account holder's behalf for a fee.

**Nipple** – The protrusion from the human breast including all of the areola.

**Non-Content** – Non-Content means matters other than the content such as contraband, e.g. glue, perfume, unpaid envelopes, Sovereign Citizen, and UCC materials.

Revised: 10/3/2018

**Nudity** – The showing of the human male or female genitals, pubic area, or anus with less than a fully opaque covering or the showing of the female nipple with less than a fully opaque covering, or the depiction of covered male genitals in a discernible turgid state.

**Obscene Material** – Any book, photograph, pamphlet, magazine, printed matter, sound recording, explicit and detailed verbal description, narrative account, or other material is considered obscene if one of the following applies:

1. an average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest; and

2. the subject matter depicts or describes in a patently offensive way; (a) ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality, (b) patently offensive representations or descriptions of masturbation or excretory functions, (c) in a sexual context, flagellation or torture upon a nude person or one clad only in undergarments, a mask or bizarre costume or fettered, bound or otherwise restrained, and/or (d) lewd exhibition of the genitals.

**Original Source** – A publisher, bookstore, book club, distributor or department store, or commercial distributor of a publication or a duly formulated not-for-profit organization that distributes the specific publication in connection with its religious, charitable, or public service purpose.

**Photograph** – A picture produced by photography or a duplicate of such a picture.

**Presorted Standard Mail** – Mail that usually consists of sales flyers, form letters, or other printed pieces that are generally identical in content, but do not meet the criteria of a publication as defined in the definition of publication. This mail is specifically identified with a United States Postal Service Presorted Standard Mail Stamp.

**Privileged Correspondence**

1. Outgoing Privileged Correspondence is outgoing inmate mail addressed to the following persons:

   a. Elected or appointed federal, state, or local officials: One to whom the inmate has petitioned to redress a grievance. The term elected or appointed official includes, but is not limited to: the courts, the President of the United States, the Governor, the Attorney General, and a District Attorney. The term elected or appointed official does not include the Veterans Administration, Bureau of Motor Vehicles, Social Security Administration, Department of Education, the Pennsylvania Prison Society, the Pennsylvania Board of Probation and Parole (PBPP), or agencies to whom the inmate has applied for benefits.

   b. Attorney: Any person authorized under applicable law to practice law and who is engaged in an attorney/client relationship with the inmate addressee. All correspondence to attorneys must be clearly marked with the attorney's full name, or the full name and address of the law firm, printed on the envelope for it to be considered privileged.

Revised: 10/3/2018

Case 1:18-cv-02069-JEJ-EBC   Document 1-5   Filed 10/30/18   Page 33 of 33

***DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual***
***Glossary of Terms***

2.  Incoming Privileged Correspondence is incoming inmate mail as described below:

    a.  Mail from an inmate's attorney that is either hand-delivered to the facility by the attorney or delivered through the mail system and identified with a control number issued to the sender by the Department's Office of Chief Counsel.

    b.  Mail from a court.

    c.  Mail from an elected or appointed federal, state, or local official who has sought and obtained a control number issued by the Department's Office of Chief Counsel. **NOTE**: Not all correspondence between an inmate and elected or appointed federal, state, or local official will require privileged correspondence processing. Control numbers will only be issued when the underlying matter involves matters related to a confidential investigation process or similar concerns.

**Prurient** – Obsessively interested in sexual matters; marked by an obsessive interest in sex; arousing or appealing to an obsessive interest in sex.

**Public Mail Systems** – The United States Postal Service and private carriers who serve the public with systems to move pieces of mail from one location to another.

**Publication** – Printed material that is circulated among the public for conveying information, including, but not limited to, newspapers, magazines, hardcover or paperback books, catalogues, pamphlets, and newsletters regardless of Postal Rate.

**Savings Account** – A passbook or statement savings account, certificate of deposit account, or Tuition Assistance Plan with a financial institution that is licensed by the federal government or a state government.

**Storage Space** – The amount of space an inmate is permitted to use to store his/her property as permitted by the policy applicable to the inmate's housing unit.

**Undeliverable Mail** – Mail that cannot be identified for delivery to a specific addressee.

Revised: 10/3/2018